63 N.J. Super. 287 (1960)
164 A.2d 627
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BRILLO MANUFACTURING COMPANY, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 4, 1960.
Decided October 19, 1960.
*289 Before Judges PRICE, GAULKIN and SULLIVAN.
Mr. Morris Gottlieb, of the New York Bar, argued the cause for the defendant-appellant (Messrs. Brenner & New, attorneys).
Mr. Robert S. Miller, Deputy Attorney General, argued the cause for the plaintiff-respondent (Mr. David D. Furman, Attorney General, attorney).
The opinion of the court was delivered by GAULKIN, J.A.D.
Brillo Manufacturing Company, Inc. (Brillo) was convicted in the municipal court upon a complaint which charged that Brillo "at premises known as Steve & Jim's Market, * * * did then and there have in their possession and sell one (1) package of Brillo Soap Pads marked (12) twelve in a box and which actually did contain 11 pads contrary to R.S. 51:1-96 (third offense) * * *." Brillo appealed to the Bergen County Court. In that court the trial de novo proceeded, without objection, as if the complaint charged not an actual sale, or possession, but rather exposure "for sale less than the quantity represented," of a commodity defined in N.J.S.A. 51:1-96. The County Court found defendant guilty of this charge, and fined it $150. Defendant now appeals to this court.
There is no dispute as to the facts. Brillo manufactures and sells steel wool products, the best known of which is "Brillo Soap Pads." These are soap-impregnated metal fiber pads used for household cleaning purposes. They are packaged by defendant in boxes marked as containing 20, 12 and 5 pads each.
On August 25, 1959 the Superintendent of Weights and Measures of Garfield visited Steve & Jim's Market and there inspected eleven boxes of "Brillo Soap Pads." Each of these boxes was marked as containing twelve pads. Nine did contain twelve pads, but two contained only eleven. One of these two boxes was marked in evidence.
*290 It is conceded by the State that defendant had no intent to defraud, nor to put less than twelve pads in each box. The defendant's evidence showed how the pads are prepared, packaged and inspected. The packing is done by the combined effort of people and machines. In front of each machine five girls make the actual count of the number of pads which the machine is to thrust into the boxes. These girls sit at a table on which there are a great number of the pads. As a conveyor moves in front of them, each girl places six pads in a cup on the conveyor. A sixth girl watches to see that each cup contains the required number of pads. The mechanical part of the packing is done by the machines, which push the contents of two cups into the open box, forming two rows or tiers within the box. The box is then mechanically closed (but not sealed) and is carried off by the conveyor.
The testimony was to the effect that Brillo has several plants; in the plant from which the package in evidence came there are four such machines; in addition to the girl who watches the count there are an inspector for each of these machines who watches to see that it operates properly and three supervisors on the floor who oversee the entire operation. The supervisors, as part of their duties, spot check the boxes throughout the day to make sure the machines are performing accurately.
Defendant admitted that occasionally the plunger of a machine will pull a pad out of a box before closing it. When that happens, the inspector immediately stops the machine and calls one of the supervisors, who takes the machine out of production. The engineering and machine departments then take over, and the machine is not put back into production until it operates properly. When a machine is taken out of production because of improper count in packaging at least five cases previously packed by this machine, or more if necessary, are opened and examined to determine where the miscount started. Brillo maintains an engineering department *291 consisting of five graduate engineers, and a machine department of forty trained machinists. The engineering department issues the necessary instructions to the machine department as to what adjustments are to be made, and inspects the machine thoroughly after all adjustments have been made by the machine department before the machine is put back into production.
Defendant's witnesses testified that Brillo has been unable to design or obtain equipment which would count the pads mechanically, because it is impossible to impregnate the pads with soap in a manner which will make them sufficiently identical in size, weight and shape to be counted by a machine. Defendant's witnesses testified that every effort is still being made to have such machinery designed, but thus far without success. Defendant ships hundreds of thousands of packages of the pads weekly from the factory which shipped the box marked in evidence.
Upon this appeal Brillo argues, first, "that the short count of the Brillo soap pad package, which is the subject matter of the complaint, falls within the purview of R.S. 51:1-97 [which expressly requires a showing of knowledge] and that section superseded" that portion of section 96 which deals with one who "sells or exposes for sale less than the quantity he represents." Second, even if 97 did not supersede 96 by implication, and 96 does apply, to justify a conviction under 96 the State must show that someone was injured or defrauded by defendant's acts; and since injury was not shown in this case (because the boxes were not sold to anyone) and the State concedes there was no recklessness, willfulness or intent to defraud, defendant was entitled to an acquittal.
The State denied that section 97 repealed or otherwise affected section 96. Moreover, says the State, even if section 97 did affect section 96 with reference to such commodities as are defined in section 97, the Brillo pads are not such a commodity. Therefore section 96 governs, and under it, says the State, neither injury nor intent to defraud is an essential *292 element of the offense of exposing for sale less than the quantity represented.
The original source of N.J.S.A. 51:1-96 is L. 1911, c. 201, § 26, p. 423, which read as follows (emphasis ours):
"Any person who injures or defrauds another by using, or causes to be used, with knowledge that the same is false, a false weight, measure, or other apparatus, for determining the quantity of any commodity, or article of merchandise, or sells or exposes for sale less than the quantity he represents, is guilty of a misdemeanor."
The State concedes that this section of the 1911 act "required knowledge or intent on the part of the defendant." Consequently, says the Attorney General, "In the Annual Report of the Department of Weights and Measures for 1912, page 24, the Superintendent suggested that the law be changed so as to strike out the words `with knowledge that the same is false.' The Superintendent declared that `several times during the year just passed, we had cases dismissed from court because we were unable to prove that the weights and measures in use were known to be false, notwithstanding the fact that the evidence was most complete.' The Legislature must have recognized the validity of this argument because in the following year it amended the statute so as to delete the words `with knowledge.' Laws 1913, Chapter 194, Section 1 * * *."
Said L. 1913, c. 194, § 1, took out the words "with knowledge that the same is false" and substituted therefor "or has in his possession with intent to use for the purpose of sale" and reduced the offense from a misdemeanor to one punishable by a penalty not exceeding $100, collection of which might be enforced by a body execution for not over 90 days. In 1918 the Legislature removed the last quoted words. L. 1918, c. 11, § 4, p. 72. After minor changes relating to procedure, not pertinent here, L. 1918, c. 11, § 4 became what is now N.J.S.A. 51:1-96.
It is true that the words "injures or defrauds another by using" are still in section 96 and have not been affected by *293 the 1913 and 1918 acts, and hence in proceedings under those words of the section knowledge and intent must still be proved. Brillo therefore argues that just as the amendments of 1913 and 1918 did not change or deal with the words "injures or defrauds another by using" so those amendments did not deal with or affect the words "sells or exposes for sale," and since the latter words required knowledge or intent in 1911 they still do today. While the argument has some force, we are convinced by the history and the changes in language above outlined that the Legislature intended to, and did, by the 1913 and 1918 amendments, make it unnecessary, under section 96, to prove knowledge or intent to establish guilt of the offense here charged.
Brillo makes the further argument that the words "any person who injures or defrauds another" modify, and must be read with, each succeeding clause of section 96, so that no act forbidden by the section is punishable unless some one has been injured or defrauded by it. "This means," says Brillo's brief, "that the words `any person who injures or defrauds another' have to precede the clause `or sells or exposes for sale less than the quantity he represents.'" We reject this construction, for it would do violence to the grammar as well as to the sense of section 96, and ignore its history.
As we have said, Brillo contends that "[I]nsofar as R.S. 51:1-97 is a restatement of R.S. 51:1-96, it supersedes R.S. 51:1-96 and has repealed that part of R.S. 51:1-96 by implication."
Section 97 was originally L. 1919, c. 197. When it was passed, said L. 1918, c. 11, § 4 was in force and, as we have said, covered all sales or exposures for sale of less than the quantity represented, even though not willful or fraudulent. What, then, was the purpose of passing L. 1919, c. 197, which covered only a portion of such sales or exposures?
L. 1919, c. 197 provided as follows (emphasis ours):
"1. The term `commodity' as used in this act shall, for the purpose of this act, be taken to mean and include anything which is *294 commonly sold by weight or measure or other apparatus for determining quantity.
2. Any person, firm, corporation or association that sells or exposes for sale less than the quantity represented of any commodity, as defined in this act, shall, for the first offense, be liable to a penalty of not less than twenty-five dollars nor more than fifty dollars, and for a second offense be liable to a penalty of not less than fifty dollars nor more than one hundred dollars, and for each subsequent offense shall be liable to a penalty of not less than one hundred dollars nor more than two hundred dollars, the amount of said penalty to be determined in the discretion of the District Court, Small Cause Court or the police magistrate of any municipality having jurisdiction."
It is at once obvious that the 1918 act covered all commodities or articles sold or exposed for sale, while the 1919 act covered only "anything which is commonly sold by weight or measure or other apparatus for determining quantity." Neither act made scienter or intent to defraud an element of that offense. The monetary penalties were identical in both acts. However, the 1918 act provided for execution against the body of the defendant, upon failure to pay the monetary penalty, for a period not to exceed 90 days, whereas the 1919 act provided only for a monetary penalty.
The introducer's statement, annexed to the bill which became L. 1919, c. 197, said:
"The purpose of this act is to prevent deception in the sale and distribution of commodities and is designed to prevent the giving of short weight.
Any person aggrieved may bring an action under this statute and it is intended to provide a flexible method for the bringing of such actions."
Before the 1919 act was passed, actions to recover the penalties could be instituted only by a "duly appointed superintendent or any assistant superintendent" of weights and measures. L. 1913, c. 194, p. 351. The 1919 act contained no limitation on who might institute the proceedings, and conferred the same jurisdiction on the Small Cause Court to hear such cases as had theretofore been given to the police magistrates and the district courts.
*295 We conclude that the 1919 act supplanted the provisions of the 1918 act insofar as concerned the sale or exposure for sale of "anything which is commonly sold by weight or measure or other apparatus for determining quantity." If there were any doubt of that when the 1919 act was passed, that doubt was completely dissipated by the passage of L. 1933, c. 260, p. 700, which amended the 1919 act to read as follows (emphasis ours):
"Any person * * * that knowingly sells, exposes for sale, delivers or causes to be delivered less than the quantity represented of any commodity, as defined in this act, shall * * *," etc.
Where two criminal or penal statutes punish the same act it is the duty of the court, having due regard for other rules of construction, to construe the statutes in the manner most favorable to the accused. Therefore, when the later enactment is less harsh than the earlier one that should be deemed to repeal by implication the earlier one. 50 Am. Jur. Statutes § 567, p. 568. It is true that section 96 was last amended in 1953 (L. 1953, c. 48, § 3, p. 839), but this amendment was only to make the names of the courts having jurisdiction conform to the new court system, and to provide that all enforcement proceedings be "pursuant to the Penalty Enforcement Law (N.J.S. 2A:58-1 et seq.)." N.J.S.A. 51:1-105.
The question then narrows down to whether the Brillo pads are "anything which is commonly sold by weight or measure or other apparatus for determining quantity." If they are, defendant is entitled to acquittal. Obviously the pads are not "commonly sold by weight or measure." Are they "commonly sold by * * * other apparatus for determining quantity"?
Brillo argues that these words must be construed as if they read "sold by weight or measure or count," because the words "weight" and "measure" exhaust all possibilities except count; that if "other apparatus for determining *296 quantity" does not mean a device for counting it is altogether meaningless; and that Brillo's machines are a device or apparatus for counting within the meaning of section 97, even though the actual counting and the setting aside of the requisite number of pads in the cups is done manually. Furthermore, says Brillo, even the hand should be construed an "apparatus" within the meaning of this section.
The State, in answer, says that counting by hand is covered by section 96, and 97 does not apply. Neither counsel was able to give us an example of a commodity which is not commonly sold "by weight or measure" but is by "other apparatus for determining quantity," or of the commodities the Legislature had in mind when it used those words in L. 1919, c. 197.
We are equally uncertain as to precisely what sales or exposures the Legislature intended to reach by those words. However, we are of the opinion that "apparatus for determining the quantity" includes apparatus which counts; that defendant's machines are not such apparatus, nor are hands; and therefore section 97 does not apply to the charge made against Brillo. "Apparatus" is defined in Webster's New International Dictionary as "any complex instrument or appliance, mechanical or chemical, for a specific action or operation; machinery; mechanism." To say that it includes the hand would do violence to the plain meaning of "apparatus." Likewise, it cannot be said that the machines, which insert only the quantity counted out by the girls, are "apparatus for determining the quantity." They are merely packaging machines.
Furthermore, defendant's arguments that section 97 applies ignore the word "commonly" in the section. The section does not apply to every commodity sold by weight or measure or count but only to those commodities which are commonly sold in that fashion. For example, a commodity might be sold by weight, but unless it is commonly so sold, section 97 would not apply. There is nothing to indicate that pads such as the Brillo pads are commonly sold by *297 count. Indeed, it may be that such pads are not "commonly" sold at all, but only by Brillo.
That there are doubts, inconsistencies, contradictions and overlappings in these (and other) sections of the statute cannot be denied, and they merit the attention of the Legislature. In addition, Brillo contends that the statute is altogether outmoded in this age of mechanical packaging and vending, but that, too, is for the consideration of the Legislature. We are compelled to construe the sections as we find them. So construed, we affirm the conviction for the reasons which we have stated. No costs.